UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**4997**

| | |
|---|---|
| RICHARD FINLAYSON, Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff(s), | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| HUANG JIA DONG, SU PEI ZHI, HEN MAN EDMUND, DING WEI DONG, PAUL K. KELLY, CHENG YAN DAVIS, WILLIAM L. STULGINSKY, SU WEI FENG, SHEN CHENG LIANG, JIANWEI LIU, AND CHINA CERAMICS CO., LTD., | |
| Defendants. | |



RECEIVED
JUL 02 2014
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Richard Finlayson ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding China Ceramics Co., Ltd. ("China Ceramics" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of China Ceramics between March 30, 2012 and May 1, 2014, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against China Ceramics and certain of its officers and directors for violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     China Ceramics is a British Virgin Islands corporation with its headquarter located in Jinjing, Fujian Province, People's Republic of China ("PRC"). The Company is a leading Chinese manufacturer of ceramic tiles used for exterior siding and for interior flooring and design in residential and commercial buildings. During the Class Period, the Company's stock was traded on the NASDAQ Stock Market ("NASDAQ") under the symbol "CCCL."

3.     On November 1, 2013, Defendant D.W. Dong abruptly resigned as a Director of the Company and a member of the Audit Committee. He was replaced by Mr. Shen Cheng Liang.

4.     On November 13, 2013, the Company announced its financial results for the third quarter of 2013. In its announcement, the Company revealed a substantial asset write-down of property, plant and equipment, stating in relevant parts:

> Asset write-down attributable to the disposal of property, plant and equipment was RMB 18.9 million (US$ 3.1 million) due to the replacement of plant production equipment at the Hengda facility that enables the manufacture of certain ceramic tile products to meet current and expected market demand Net profit was RMB 4.4 million (US$ 0.7 million).

5.     On November 27, 2013, Defendant Kelly suddenly resigned as the non-Executive Chairman of the Board. He was replaced by Mr. Liu Jianwei.

6. On that same day, Defendant Davis unexpectedly submitted her letter of resignation to the Board, effective the end of business on December 31, 2013. On January 7, 2014, Defendant Davis withdrew her resignation.

7. On April 27, 2014, Defendant Stulginsky abruptly resigned as a Director of the Company and Chairman of the Audit Committee. The circumstances surrounding his abrupt departure would be revealed days later.

8. On April 28, 2014, Defendant Su resigned as a Director of the Company.

9. On May 1, 2014, NASDAQ announced the halt in trading of the common shares of China Ceramics. The announcement states in relevant parts:

> The NASDAQ Stock Market® (Nasdaq:NDAQ) announced that trading was halted today in China Ceramics Co., Ltd. (Nasdaq:CCCL) at 9:13:00 Eastern Time for "additional information requested" from the company at a last price of $1.33.

> Trading will remain halted until China Ceramics Co., Ltd. has fully satisfied NASDAQ's request for additional information.

10. On the same day, the Company filed a notification on Form 12b-25 with the SEC of its inability to timely file its Annual Report on Form 20-F for the year ended December 31, 2013.

11. The following day, the Company announced the delay in the filing of its annual report for the year ended December 31, 2013 and partially revealed the circumstances surrounding the delay, which includes the firing of its auditor, the hiring of a new auditing firm, and the re-auditing of its prior financial statements. The Company stated, in relevant parts:

> The audit of the Company's consolidated financial statements for the year ended December 31, 2013 has not been completed. On April 30, 2014, the Company terminated the engagement of Grant Thornton (Shanghai, PRC) ("GT") as its principal independent registered public accountants. Following the GT termination, the Company engaged Crowe Horwath (HK) CPA Limited ("CHHK") as the Company's principal independent

registered public accountant to audit the Company's financial statements for the fiscal years ended December 31, 2013, 2012 and 2011, as well as to perform services related to the auditing of those financial statements. The Audit Committee and the Board of Directors voted to terminate GT's engagement and to engage a new auditing firm on April 27, 2014, and on April 30, 2014 the Audit Committee and the Board of Directors approved the engagement of CHHK. CHHK was formally engaged on May 1, 2014.

12.     The Company disclosed that Defendant Stulginsky resigned as an independent director and Chairman of the Audit Committee on April 27, 2014 following the Audit Committee's determination to fire Grant Thornton (Shanghai, PRC) ("Grant Thornton") and hire a new auditing firm, Crowe Horwath (HK) CPA Limited ("Crowe Horwath").

13.     The Company also disclosed that it was notified by NASDAQ of its non-compliance with NASDAQ's continued listing requirement due to its inability to timely file its Annual Report on Form 20-F for the year ended December 31, 2013.

14.     In the same announcement, the Company also revealed a substantial write down of assets in the fourth quarter of 2013, stating in relevant parts:

> During the course of the preparation of its 2013 financial statements, the Company identified certain adjustments in the fourth quarter in connection with a write down of assets resulting from unused capacity at the Company's Hengdali facility. The Company's Hengdali facility utilized capacity capable of producing eight million square meters of ceramic tiles annually in 2013 out of an annual productive capacity of 30 million square meters. The Company's current estimate of the asset write-down for the fourth quarter is approximately $7.5 million.

15.     On May 9, 2014, the Company filed a Form 6-K with the SEC, which provides further details on its firing of Grant Thorton and the re-auditing of its prior financial statements for the years ended December 31, 2012 and 2011. In dismissing Grant Thornton, the Company cited to differences between Grant Thornton and itself in addressing the numerous concerns Grant Thornton raised in connection with its audit of the Company's consolidated financial statements for the year ended December 31, 2013. The Company stated, in relevant parts:

The Audit Committee and the Board voted to dismiss GT and to engage a new auditing firm to audit the financial statements of the Company for the year ended December 31, 2013 and to re-audit the financial statements for the years ended December 31, 2012 and 2011 based on the communications between GT and management and the Audit Committee regarding the concerns, the view of a majority of the members of the Audit Committee that communications between GT and the Company's management and Audit Committee had become impaired, and the fact that the positions adopted by GT had already foreclosed the timely filing of the Company's Annual Report on Form 20-F.

******

Additional information regarding the concerns raised by GT will be included in subsequent reports on Form 6-K and/or in the Company's Annual Report on Form 20-F for the year ended December 31, 2013.

16.     The Company also disclosed in the same Form 8-K that prior to NASDAQ's halt in the trading of its securities, it previously notified NASDAQ of (i) its inability to timely file its Annual Report on Form 20-F; and (ii) its firing of Grant Thornton Shanghai PRC ("GT") as the Company's principal independent registered public accountants on April 30, 2014.

17.     To date, trading in the Company's stock remains halted, making the Company's stock illiquid and virtually worthless.

## JURISDICTION AND VENUE

18.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

19.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

20.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

21.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

22.     Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the common stock of China Ceramics at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

23.     Defendant China Ceramics is a British Virgin Islands corporation with its headquarter located in Jinjing, Fujian Province, People's Republic of China ("PRC"). The Company is a leading Chinese manufacturer of ceramic tiles used for exterior siding and for interior flooring and design in residential and commercial buildings. During the Class Period, the Company's stock was traded on the NASDAQ Stock Market ("NASDAQ") under the symbol "CCCL."

24.     Defendant Huang Jia Dong ("H.J. Dong") has been the Chief Executive Officer of the Company since April 4, 2010. He has been a Director of the Company since November 20, 2009.

25.     Defendant Su Pei Zhi ("Zhi") was a Director of the Company from November 20, 2009 until his resignation on April 28, 2014. He was also the Sales Deputy General Manager of the Company.

26.     Defendant Hen Man Edmund ("Edmund") has been the Company's Chief Financial Officer since November 20, 2009.

27.     Defendant Ding Wei Dong ("D.W. Dong") was a Director of the Company from November 20, 2009 until his sudden resignation on November 1, 2013. As a Director of the Company, he served as a member of the Audit Committee. Upon his resignation, he was replaced by Shen Cheng Liang.

28.     Defendant Paul K. Kelly ("Kelly") was a Director of the Company from August 18, 2009 and the Non-Executive Chairman of the Company from April 4, 2010 until his sudden resignation on November 27, 2013. As a Director of the Company, he served as a member of the Audit Committee. He was subsequently replaced by Jianwei Liu.

29.     Defendant Cheng Yan Davis ("Davis") has been a Director of the Company since November 20, 2009. As a Director of the Company, he served as a member of the Audit Committee. On November 27, 2013, she submitted a letter of resignation effective the end of business on December 31, 2013, but later withdrew it on January 7, 2014.

30.     Defendant William L. Stulginsky ("Stulginsky") was a Director of the Company from April 1, 2010 until his sudden resignation on April 27, 2014. As a Director of the Company, he served as the Chairman of the Audit Committee.

31.     Defendant Su Wei Feng ("Feng") has been a Director of the Company since April 1, 2010.

32.     H.J. Dong, Zhi, Edmund, D.W. Dong, Kelly, Davis, Stulginsky, and Feng are collectively referred to hereinafter as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

33.     China Ceramics is a British Virgin Islands corporation with its headquarter located in Jinjing, Fujian Province, People's Republic of China ("PRC"). The Company is a leading Chinese manufacturer of ceramic tiles used for exterior siding and for interior flooring

and design in residential and commercial buildings. During the Class Period, the Company's stock was traded on the NASDAQ Stock Market ("NASDAQ") under the symbol "CCCL."

## Materially False and Misleading
## Statements Issued During the Period

34.     The Class Period begins on March 30, 2012 when China Ceramics filed with the SEC a materially false and misleading Form 20-F for the fiscal year ended December 31, 2011 (the "2011 20-F").

35.     The 2011 20-F falsely stated that based on the Defendants H.J. Dong and Edmund's evaluation as the Company's CEO and CFO, the Company's internal control over its financial reporting were effective. The 2011 20-F states in relevant parts:

> Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, management conducted an evaluation of the effectiveness of our internal control over financial reporting based on the criteria established in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission. Management has concluded that our internal control over financial reporting was effective as of December 31, 2011.

36.     The 2011 20-F was also false and misleading for it failed to disclose the risk of write-downs of its assets.

37.     The 2011 20-F was signed by Defendants H.J. Dong and Edmund. Accompanying the 2011 20-F were the executed Sarbanes-Oxley Act of 2002 ("SOX") certifications of Defendants H.J. Dong and Edmund falsely attesting to the accuracy of the 2011 20-F.

38.     On April 24, 2013, China Ceramics filed with the SEC a materially false and misleading Form 20-F for the fiscal year ended December 31, 2012 (the "2012 20-F").

39.     The 2012 20-F falsely stated that based on the evaluation of the Company's management that its consolidated financial statements were "fairly stated" despite the identification of a material weakness. The 2012 20-F states in relevant parts:

> Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, management conducted an evaluation of the effectiveness of our internal control over financial reporting based on the criteria established in Internal Control — Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission. Management has concluded that our internal control over financial reporting was not effective as of December 31, 2012 due to the material weakness described below.
>
> A material weakness (within the meaning of PCAOB Auditing Standard No. 5) is a deficiency, or a combination of deficiencies, in internal controls over financial reporting, such that there is a reasonable possibility that a material misstatement of our annual or interim financial statements will not be prevented or detected on a timely basis.
>
> The Company's management determined that Company's oversight of complex transactions is not effective. Specifically, the analysis by management of certain transactions and the supporting documentation generated were not sufficiently detailed to fulfill the requirements of IFRS as issued by the IASB. From time to time the Company will encounter non-routine accounting transactions that require a high level of technical accounting expertise. Non-routine accounting transactions will likely increase in frequency as the Company continues to grow and expand its operations.
>
> As of the date of this report, we are undertaking steps to correct the aforementioned material weakness by providing relevant IFRS trainings to the current corporate accounting team, engaging an external consulting company to review our key operational processes and related internal controls for improvement in internal control system, strengthening the information-sharing process between us and our external accounting advisory consultants and implementation of more formal review procedures and documentation standards for the accounting and monitoring of non-routine and complex transactions.
>
> Notwithstanding this material weakness, management has concluded that the consolidated financial statements included in this annual report are fairly stated in all material respects for each period presented herein.

40.     The 2012 20-F was also false and misleading for it failed to disclose the risk of write-downs of its assets.

41.     The 2012 20-F was signed by Defendants H.J. Dong and Edmund. Accompanying the 2012 20-F were the executed Sarbanes-Oxley Act of 2002 ("SOX") certifications of Defendants H.J. Dong and Edmund falsely attesting to the accuracy of the 2012 20-F.

### The Truth Begins to Emerge

42.     On November 1, 2013, Defendant D.W. Dong abruptly resigned as a Director of the Company and a member of the Audit Committee. He was replaced by Mr. Shen Cheng Liang.

43.     On November 13, 2013, the Company announced its financial results for the third quarter of 2013. In its announcement, the Company revealed a substantial asset write-down of property, plant and equipment, stating in relevant parts:

> Asset write-down attributable to the disposal of property, plant and equipment was RMB 18.9 million (US$ 3.1 million) due to the replacement of plant production equipment at the Hengda facility that enables the manufacture of certain ceramic tile products to meet current and expected market demand Net profit was RMB 4.4 million (US$ 0.7 million).

44.     On November 27, 2013, Defendant Kelly suddenly resigned as the non-Executive Chairman of the Board. He was replaced by Mr. Liu Jianwei.

45.     On that same day, Defendant Davis unexpectedly submitted her letter of resignation to the Board, effective the end of business on December 31, 2013. On January 7, 2014, Defendant Davis withdrew her resignation.

46.     On April 27, 2014, Defendant Stulginsky abruptly resigned as a Director of the Company and Chairman of the Audit Committee. The circumstances surrounding his abrupt departure would be revealed days later.

47.    On April 28, 2014, Defendant Su resigned as a Director of the Company.

48.    On May 1, 2014, NASDAQ announced the halt in trading of the common shares

of China Ceramics. The announcement states in relevant parts:

> The NASDAQ Stock Market® (Nasdaq:NDAQ) announced that trading
> was halted today in China Ceramics Co., Ltd. (Nasdaq:CCCL) at 9:13:00
> Eastern Time for "additional information requested" from the company at
> a last price of $1.33.
>
> Trading will remain halted until China Ceramics Co., Ltd. has fully
> satisfied NASDAQ's request for additional information.

49.    On the same day, the Company filed a notification on Form 12b-25 with the SEC

of its inability to timely file its Annual Report on Form 20-F for the year ended December 31,

2013.

50.    The following day, the Company announced the delay in the filing of its annual

report for the year ended December 31, 2013 and partially revealed the circumstances

surrounding the delay, which includes the firing of its auditor, the hiring of a new auditing firm,

and the re-auditing of its prior financial statements. The Company stated, in relevant parts:

> The audit of the Company's consolidated financial statements for the year
> ended December 31, 2013 has not been completed. On April 30, 2014, the
> Company terminated the engagement of Grant Thornton (Shanghai, PRC)
> ("GT") as its principal independent registered public accountants.
> Following the GT termination, the Company engaged Crowe Horwath
> (HK) CPA Limited ("CHHK") as the Company's principal independent
> registered public accountant to audit the Company's financial statements
> for the fiscal years ended December 31, 2013, 2012 and 2011, as well as
> to perform services related to the auditing of those financial statements.
> The Audit Committee and the Board of Directors voted to terminate GT's
> engagement and to engage a new auditing firm on April 27, 2014, and on
> April 30, 2014 the Audit Committee and the Board of Directors approved
> the engagement of CHHK. CHHK was formally engaged on May 1, 2014.

51.    The Company disclosed that Defendant Stulginsky resigned as an independent

director and Chairman of the Audit Committee on April 27, 2014 following the Audit

Committee's determination to fire Grant Thornton (Shanghai, PRC) ("Grant Thornton") and hire a new auditing firm, Crowe Horwath (HK) CPA Limited ("Crowe Horwath").

52.     The Company also disclosed that it was notified by NASDAQ of its non-compliance with NASDAQ's continued listing requirement due to its inability to timely file its Annual Report on Form 20-F for the year ended December 31, 2013.

53.     In the same announcement, the Company also revealed a substantial write down of assets in the fourth quarter of 2013, stating in relevant parts:

> During the course of the preparation of its 2013 financial statements, the Company identified certain adjustments in the fourth quarter in connection with a write down of assets resulting from unused capacity at the Company's Hengdali facility. The Company's Hengdali facility utilized capacity capable of producing eight million square meters of ceramic tiles annually in 2013 out of an annual productive capacity of 30 million square meters. The Company's current estimate of the asset write-down for the fourth quarter is approximately $7.5 million.

54.     On May 9, 2014, the Company filed a Form 6-K with the SEC, which provides further details on its firing of Grant Thorton and the re-auditing of its prior financial statements for the years ended December 31, 2012 and 2011. In dismissing Grant Thornton, the Company cited to differences between Grant Thornton and itself in addressing the numerous concerns Grant Thornton raised in connection with its audit of the Company's consolidated financial statements for the year ended December 31, 2013. The Company stated, in relevant parts:

> The Audit Committee and the Board voted to dismiss GT and to engage a new auditing firm to audit the financial statements of the Company for the year ended December 31, 2013 and to re-audit the financial statements for the years ended December 31, 2012 and 2011 based on the communications between GT and management and the Audit Committee regarding the concerns, the view of a majority of the members of the Audit Committee that communications between GT and the Company's management and Audit Committee had become impaired, and the fact that the positions adopted by GT had already foreclosed the timely filing of the Company's Annual Report on Form 20-F.

******

> Additional information regarding the concerns raised by GT will be
> included in subsequent reports on Form 6-K and/or in the Company's
> Annual Report on Form 20-F for the year ended December 31, 2013.

55.     The Company also disclosed in the same Form 8-K that prior to NASDAQ's halt

in the trading of its securities, it previously notified NASDAQ of (i) its inability to timely file its

Annual Report on Form 20-F; and (ii) its firing of Grant Thornton Shanghai PRC ("GT") as the

Company's principal independent registered public accountants on April 30, 2014.

56.     To date, trading in the Company's stock remains halted, making the Company's

stock illiquid and virtually worthless.

## PLAINTIFF'CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

otherwise acquired China Ceramics securities during the Class Period (the "Class"); and were

damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are

Defendants herein, the officers and directors of the Company, at all relevant times, members of

their immediate families and their legal representatives, heirs, successors or assigns and any

entity in which Defendants have or had a controlling interest.

58.     The members of the Class are so numerous that joinder of all members is

impracticable. Throughout the Class Period, China Ceramics securities were actively traded on

the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time

and can be ascertained only through appropriate discovery, Plaintiff believes that there are

hundreds or thousands of members in the proposed Class. Record owners and other members of

the Class may be identified from records maintained by China Ceramics or its transfer agent and

may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

59.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

60.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

61.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of China Ceramics;

- whether the Individual Defendants caused China Ceramics to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of China Ceramics securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

62.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

63. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- China Ceramics securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold China Ceramics securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

64. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

65. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in Affiliated Ute Citizens of the State of Utah v. United States, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

68.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of China Ceramics securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire China Ceramics securities and options at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

69.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for China Ceramics securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about China Ceramics' finances and business prospects.

70.     By virtue of their positions at China Ceramics, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

71.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of China Ceramics securities from their personal portfolios.

72.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of China Ceramics, the Individual Defendants had knowledge of the details of China Ceramics' internal affairs.

73.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of China Ceramics. As officers and/or directors of a publicly-held company, the Individual

Defendants had a duty to disseminate timely, accurate, and truthful information with respect to China Ceramics' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of China Ceramics securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning China Ceramics' business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired China Ceramics securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

74. During the Class Period, China Ceramics securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of China Ceramics securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of China Ceramics securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of China Ceramics securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

75.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

77.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     During the Class Period, the Individual Defendants participated in the operation and management of China Ceramics, and conducted and participated, directly and indirectly, in the conduct of China Ceramics' business affairs. Because of their senior positions, they knew the adverse non-public information about China Ceramics' misstatement of income and expenses and false financial statements.

79.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to China Ceramics' financial condition and results of operations, and to correct promptly any public statements issued by China Ceramics which had become materially false or misleading.

80.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which China Ceramics disseminated in the marketplace during the Class Period concerning China Ceramics' results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause China Ceramics to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of China Ceramics within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of China Ceramics securities.

81.     Each of the Individual Defendants, therefore, acted as a controlling person of China Ceramics. By reason of their senior management positions and/or being directors of China Ceramics, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, China Ceramics to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of China Ceramics and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

82.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by China Ceramics.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:   July 2, 2014

POMERANTZ LLP

Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
migross@pomlaw.com
jalieberman@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

{00135362;1 }

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1.  I, ___RICHARD FINLAYSON___, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against China Ceramics Co., Ltd. ("China Ceramics" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire China Ceramics securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired China Ceramics securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in China Ceramics securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.


Executed ___ / JuLY 2014 ___
                (Date)


_____
(Signature)

RICHARD FINLAYSON
(Type or Print Name)

**China Ceramics Co., Ltd. (CCCL)**                    **Finlayson, Richard**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 9/11/2013 | PUR | 500 | $2.7119 |
| 10/29/2013 | PUR | 500 | $3.4790 |
| 11/13/2013 | PUR | 500 | $3.2217 |
| 1/13/2014 | PUR | 58 | $2.4490 |

finlayson